

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EJK:HLJ         *271 Cadman Plaza East*
F.#2010R00879     *Brooklyn, New York 11201*

June 13, 2011

**By Hand Delivery and ECF**

The Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:  United States v. Kim Goodwine
             Criminal Docket No. 10-452 (DLI)

Dear Judge Irizarry:

       On November 4, 2010, the defendant pled guilty before Your Honor to Count One of a two-count indictment, charging her with Assault on a Federal Officer in violation of 18 U.S.C. § 111(a)(1).  The defendant is scheduled to be sentenced on June 15, 2011.  The government hereby submits this response to the defendant's letter, dated May 25, 2011, ("Ltr.") seeking a sentence below the applicable advisory United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") range based on her mental health and substance abuse issues, personal history, family circumstances and true remorse.  Specifically, the defendant seeks a non-custodial sentence of five years probation, with special conditions of six months' home detention, mental health and substance abuse treatment and 100 hours of community service.  Ltr. at 1.

       In addition to the defendant's May 25, 2011 letter, the government is in receipt of the defendant's sentencing exhibits, filed under seal on May 25, 2011, the Pre-Sentence Investigation Report ("PSR") dated March 9, 2011, the defendant's objections to the PSR, dated April 7, 2011, the First and Second Addendums to the PSR, dated March 30, 2011 and May 6, 2011, respectively, and the Probation Department's Sentencing Recommendation, dated March 9, 2011.  In response to the defendant's objections to the PSR, the government filed a letter dated April 20, 2011.  The parties agree that the defendant's total offense level is 13 and that her Criminal History Category is II, resulting in a Guidelines range of imprisonment of 15 to 21 months.  See PSR ¶ 140; Ltr. at 7.

Although the government agrees that the defendant's extraordinary family circumstances may warrant a downward departure, it takes no position with respect to the length of such a departure.  Notwithstanding the defendant's family circumstances and background, the government respectfully submits that a sentence including a period of incarceration is appropriate and reasonable in light of the defendant's criminal history and the circumstances of the instant offense.

I.   Background

On April 18, 2010, the defendant boarded a Delta flight in Atlanta, Georgia that was scheduled to fly to LaGuardia Airport, in Queens, New York.  The defendant was heavily intoxicated when she boarded the flight and proceeded to sit in an aisle seat to which she was not assigned and fall asleep.  The purchaser of the aisle seat, a pregnant woman, asked the flight crew for assistance in asking the defendant to move to her proper seat after the defendant initially failed to move when the pregnant passenger asked her to do so.  When the defendant was asked to move by the crew member, she became belligerent toward the passenger and the flight crew member, but ultimately changed seats.

Once the flight was airborne, the defendant again started shouting and yelling obscenities and racial epithets at the pregnant passenger and the flight crew, causing the pregnant passenger to cry.  Unable to control the defendant, the flight crew approached an agent with the Federal Bureau of Investigation ("FBI") who was on board the flight and asked him for assistance.  The FBI agent moved to the pregnant passenger's seat and both identified himself as an FBI agent and was introduced to the defendant by a flight crew member as law enforcement.

The FBI agent asked the defendant to remain silent and cooperative for the remainder of the flight.  When the defendant took out her digital camera and began videotaping, the FBI agent asked her to put away her device.  However, the defendant became increasingly belligerent and continued to yell obscenities at the flight crew and the FBI agent and refused to cooperate.  A flight crew member informed the FBI agent that the defendant would be placed under arrest upon arrival at LaGuardia Airport.

The FBI agent then asked the defendant to follow him to the back of the plane.  The defendant refused and instead of cooperating, continued to act aggressively toward the FBI agent, kicking and pushing him as he proceeded to put handcuff restraints on her.  The FBI agent escorted the defendant, who was

extremely combative, down the aisle to the rear of the aircraft.
As the FBI agent assisted the defendant into an empty seat in the
rear of the plane, the defendant leaned down and bit both the FBI
agent's hands, drawing blood, and continued to kick the agent.
The FBI agent was examined by a doctor upon arrival in New York.

II.   The Legal Standard

        In the Supreme Court's opinion in United States v.
Booker, 543 U.S. 220, 245 (2005), which held that the Sentencing
Guidelines are advisory rather than mandatory, the Court made
clear that district courts are "require[d] . . . to consider
Guidelines ranges" in determining sentences, but may tailor
sentences in light of other statutory concerns.  See 18 U.S.C. §
3553(a).  In Gall v. United States, 552 U.S. 38 (2007), the
Supreme Court elucidated the proper procedure for sentencing
courts to follow: "[A] district court should begin all sentencing
proceedings by correctly calculating the applicable Guidelines
range.  As a matter of administration and to secure nationwide
consistency, the Guidelines should be the starting point and the
initial benchmark." Gall, 552 U.S. at 49-50 (citation omitted).
Next, a sentencing court should "consider all of the § 3553(a)
factors to determine whether they support the sentence requested
by a party.  In so doing, he may not presume that the Guidelines
range is reasonable.  He must make an individualized assessment
based on the facts presented." Id. (citation and footnote
omitted).

III.  Sentencing Arguments

        A.   The Defendant's Family Circumstances Are Mitigating
             Circumstances the Court Should Consider

        The defendant argues for a probationary sentence in
part due to her family circumstances.  She argues that the Court
should downwardly depart based on these extraordinary
circumstances and/or consider them under 18 U.S.C. § 3553(a).
Ltr. at 8-9.  While the government agrees that the Court should
consider the defendant's family circumstances in this case, it
takes no position as to the extent of any downward departure.

        Although advisory, the pertinent Guidelines policy
statement provides that "family ties and responsibilities are not
ordinarily relevant."  U.S.S.G. § 5H1.6.  The cases interpreting
the Guidelines provide that family ties and relationships warrant
a downward departure only when they are truly "extraordinary."
See United States v. Galante, 111 F.3d 1029, 1033 (2d Cir. 1997).
Absent extraordinary circumstances, courts are discouraged from

downwardly departing based upon family circumstances.  <u>Galante</u>,
111 F.3d at 1034; <u>United States v. Johnson</u>, 964 F.2d 124, 128 (2d
Cir. 1992) ("Disruption of the defendant's life, and the
concomitant difficulties for those who depend on the defendant,
are inherent in the punishment of incarceration.").

     Such extraordinary circumstances are present where
family members are "uniquely dependent" upon a defendant for
financial or emotional support.  <u>United States v. Faria</u>, 161 F.3d
761, 762 (2d Cir. 1998).  In <u>Faria</u>, the Second Circuit reaffirmed
its position that adverse consequences to a family, even a family
that includes young children, due to a defendant's incarceration
do not warrant a downward departure without truly exceptional
circumstances.  <u>Id</u>. at 763.  <u>See also</u> <u>United States v. Alba</u>, 933
F.2d 1117, 1122 (2d Cir. 1991) (affirming downward departure
where the defendant and his wife were responsible for caring for
their two daughters (ages 4 and 11), the defendant's disabled
father (who depended on the defendant to help him in and out of
his wheelchair) and the defendant's grandmother).

     As noted in the PSR and the defendant's letter, the
defendant is the sole caregiver for her two minor children, both
of whom have either mental or behavioral problems.  Although the
defendant's mother provides financially for the children, she
appears unable to care for them.  <u>See</u> Ltr. at 9, Ex. A; Probation
Dep't Sentencing Recommendation at 2.  In addition, despite the
best efforts of the defendant's aunt, she too is unable to care
for the defendant's sons due to their emotional needs as well as
her own health.  <u>See</u> Ltr. at 6, Ex. K.  Given these
circumstances, it appears the defendant's children face a genuine
possibility of being placed in the custody of ACS if the
defendant is sentenced to a period of incarceration.  As urged by
defense counsel, such circumstances may be considered by the
Court as mitigating factors for the purpose of sentencing,
particularly given the fact that one of the sons was reportedly
sexually abused when previously in foster care.  Though the
government agrees a downward departure for family circumstances
is appropriate, it takes no position with respect to the extent
of such a departure in this case.

    B.   The Defendant's Criminal History Compels a Sentence
       That Includes a Custodial Term

     As chronicled in the PSR and the defendant's letter,
there can be little dispute that the defendant's life has been
scarred by "emotional and physical abuse, family turmoil, and
personal tragedy."  Ltr. at 2.  The government agrees that these
facts are relevant and appropriate to consider under the 3553(a)
factors. While the government is not unsympathetic to the

defendant's tragic personal history and the needs of her sons (which are indeed compelling), the defendant's lengthy criminal history -- which includes the use of violence and multiple incidents of disrespect for authority and the law -- should not be overlooked. This is the defendant's twenty-third arrest and fifteenth conviction, yet the defendant only falls within Criminal History Category II due to the age of many of her previous convictions. Although the defendant admits she was "in and out of jail until she was 25 years old," Ltr. at 2, the characterization of her prior criminal conduct as amounting to a series of thefts of clothing obscures the fact that some of those incidents also involved use of force. See PSR ¶ 33 (1989 - when confronted by store security guard for stealing merchandise, the defendant scratched and kicked the guard); ¶ 35 (1989 - the defendant grabbed a shoulder bag from the victim, breaking the strap and forcibly removing it); ¶ 47 (1995 - defendant forcibly removed a wrist watch from the victim by pushing her to the ground and punching her in the head); ¶ 55 (2006 - the defendant resisted arrest and threatened to use physical force against the officer who was attempting to make a lawful arrest); ¶ 67 (2010 pending case - the defendant damaged the victim's automobile by hitting it with a large commercial ashtray causing damage, including a cracked windshield).

Closer inspection of her criminal record also reveals that the defendant has repeatedly failed to take responsibility for her actions and has demonstrated a flagrant lack of respect for the law and authority. See PSR ¶ 28 (1988 - the defendant failed to appear for court because believed she was not responsible for the charged crimes); ¶ 36 (1989 - after pleading guilty the defendant denied her guilt when interviewed by local probation officer); ¶ 59-60 (2009 - defendant provided a false name to officer when she was pulled over for speeding and then fled from the officer in her car after failing to provide identification). And notwithstanding having been treated leniently by the criminal justice system in the past, the defendant has a history of failing to comply with court appearances, probationary programs, attempts to assist her with drug treatment and pretrial supervision. See PSR ¶ 29 (April 1989-February 1990 the defendant made unsatisfactory adjustment and was rearrested; was again placed on interim supervision in the fall of 1990 failed to report and was rearrested); PSR ¶ 93 (2002-failure to appear in Family Court after being accused of hitting her son with a belt and consequently losing custody of her children); ¶ 111-12 (2006 - defendant's attendance at drug treatment program was initially fair then negative; only when faced with the potential loss of parental rights did the defendant's attendance improve); ¶ 99 (while on pretrial release in the instant case the defendant tested positive for marijuana,

missed 9 of 11 scheduled drug tests as of March 9, 2011, and was arrested twice).

The defendant's long history of using violence and of disrespect for both the law and the person and property of others is particularly troubling in light of the defendant's conduct in the charged offense, in which she boarded a flight heavily intoxicated, berated another passenger, yelled obscenities at flight crew members, refused to comply with the instructions of a federal officer and ultimately bit him. Notably, the defendant asserts in her objections to the PSR, dated April 7, 2011, that she did not push and bite the agent until she became "startled" when he tried to forcibly move her, suggesting that her response was one based on her history of physical abuse. However, as noted in the government's response to the defendant's objections, dated April 20, 2011, the defendant's version of events is belied by the account of the FBI agent, who stated that he repeatedly asked the defendant to cooperate and to remain silent, but that she refused. When he indicated that she would be placed in restraints for both her own safety and that of the other passengers, she became combative and starting kicking and hitting him. The defendant was ultimately handcuffed, moved to the rear of the aircraft and as she was assisted into empty seats she bit the FBI agent and continued to kick him.

Although the defendant's family circumstances are compelling, in light of all of the above, the government submits that a period of incarceration is appropriate in this case. Given the defendant's criminal history, the need for the sentence to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense is particularly compelling. Moreover, the need for specific deterrence as well as to protect the public from the defendant exists in this case. In addition, the government agrees with the Probation Department and defense counsel that mental health treatment (which the government submits should include anger management treatment) and substance abuse evaluation and treatment are especially vital given the defendant's personal and medical history, which includes alcoholism, drug use, suicide attempts and violent tendencies.

IV.  <u>Conclusion</u>

For the foregoing reasons, the Court should sentence the defendant to a term of incarceration with the other special conditions noted by the Probation Department.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:  _____/s/_____
Hilary Ley Jager
Assistant United States Attorney
(718) 254-6248


cc:  Clerk of Court (DLI) (by ECF)
     Len Kamdang, Esq. (by ECF)
     U.S.P.O. Patricia Sullivan (by e-mail)